Our next case this morning is Rowell v. Muskogee County Board number 19-7062. Mr. Monroe, you may proceed. Good morning. May it please the court, as you know, I'm Stan Monroe representing Zachary Rowell, the special administrator of his father's estate. The issue before the court is whether or not the district court committed error by granting summary judgment to the appellees. And since the district court focused its decision to grant summary judgment with respect to Mr. West, and by finding no constitutional violation, the district court essentially said with no constitutional violation it really didn't address the merits of the other appellees. Sure, the court may be aware of the facts, but just briefly summarize. Many of the facts are undisputed, it's true, but the critical facts or certain critical facts that are clearly in dispute, and we say for that reason the district court committed error by granting summary judgment. Now there was an audio with a video, which incidentally I didn't even know there was a video till after I took Mr. West's deposition, I wish I'd known it, but that's part of the record. It's contained in volume 2 of our appendix, exhibit 4. I think the appellees have also included the video for the court's determination, so we submit that it would probably be necessary for the court to actually watch the video and listen to the audio portion to help you decide whether or not there were facts in dispute based on the district court's order. Mr. Rowell arrested for public intoxication, he goes taken to the Muskogee County Jail, he is taken into the booking area, and at some point not too long after he enters, he engages some of the detention officers in conversations. Some would even describe his conduct as being mouthy, but the district court made a finding that Mr. Rowell was mostly compliant, and basically the district court said, however, from a review of the video, it did not appear that Mr. West intentionally caused Mr. Rowell to fall to the floor, hit his head, and die, so that, and the court determined that if anything, the amount of force used by Mr. West was de minimis. We pointed out in our response to summary judgment, and would invite the court to review this as well, Mr. West did admit on the video to another detention officer in response to a question or response to a statement by that other officer, you shoved him, and Mr. West said, yeah, I did. Mr. Monroe, in route, and I realize it's after the events, and it's unpublished, but in route, the panel specifically acknowledged that there wasn't a constitutional violation, recognizing that in that case that there was also a push. It was a slight push. Yes, Mr. West, Dakota West, that he had done a shove. Why isn't it obvious from the video, and I'm confident that all of my colleagues and I have watched the video, that it's obvious that there, if there was a push or a shove, that it was only a slight push. You can tell that from the video, and I don't think you've ever argued, in fact, either in summary judgment or on appeal, that it was anything other than a shove. You've never used an adjective or an adverb to say that it was heavy or forceful or anything like that, so you would agree with that. We would. We do not contend that Mr. West was trying to cause this man to die, but based on all the facts leading up to the time of his fall to the ground, there are certain facts that I think the court should take into consideration. Number one. But if you isolate, I know you want to talk about the restraint chair. Yes, yes. I'm confident that you do, and I want to hear from you about that, but if we, if it is, as Judge White said, irrelevant, if we don't take into account, for whatever reason, the restraint chair, you're not arguing that the slight push, the arm grab in the hallway in itself would have been enough for a violation of a clearly established constitutional right without regard to what precipitated them being in the hallway in the first place. Is that fair? I respectfully disagree with that assessment, and that's the severity of the injury. Now, route is, was decided, was a motion to dismiss based upon failure to state a claim, and I know the appellees will try to say that's a distinction without a difference, but I in the case before the court now, we have, I mean, Mr. Rout, rather, had insignificant injuries, whereas Mr. Rowell died. So death is a, is a big deal. It's a significant factor, and it's, there are many cases that say, in particularly in the deliberate indifference context, and the court heard some of those cases this morning, that the Regalado versus Tulsa County case, that court specifically said death is, the death of an inmate is something that requires additional focus, whereas a de minimis amount of physical force inflicted upon an inmate who didn't suffer any injury, there's perhaps a different analysis. So is it your, your position that there is no de minimis exception, which is what the district court seemed to find if you have severe injury irrespective of the level of force? Well, severe injury or death, certainly. Yes. That, I mean, in our view, the de minimis nature of the push or shove is taken in a different context. If you look at the entirety of all the cases, I think that that's definitely a distinction, and that's why Routt versus Howard, we say, would not be controlling. Well, counsel, de minimis or not de minimis, what specifically would you point to to argue that Officer West acted in a way that was objectively unreasonable? But what exactly did he do that was wrong here? Well, first, he made the decision based upon very limited information to put Mr. Rowell in the restraint chair, along with the other officers, detention officers, which would include Mr. Slay and Ms. Rawson, the supervisor. They made the decision in violation of jail policy to put him in the restraint chair, and we contend that... But did that decision, counsel, did that decision cause the fall, the decision to put him in the restraint chair? Did that cause the fall to happen? Not alone, not independently, but it was a part of it. Well, did it cause it? I mean, maybe it was a but for the decision to put him in the restraint chair. They wouldn't have taken him out in the hallway, but you can say the same thing about arresting him in the first place. If they hadn't arrested him, they wouldn't have taken him out in the first place. So what does the restraint chair have to do with anything? Well, I think the fact, and Wes acknowledges this, that the fact that Rowell knew he was being taken to the restraint chair, and he was standing up for himself and questioning whether or not that was necessary as they were walking down the hall toward the restraint chair. So, true, putting him, the decision to put him in the restraint chair in isolation would not be a critical fact, but if you take, if you look at the facts from the video and the finding by the district court that Mr. Rowell was being compliant, then one must ask yourself, well, why go to the extreme of putting him in the restraint chair? But that is a sequence of events, and as they're walking down the hallway, culminating in Wes manhandling Rowell, resulting in Mr. Rowell falling to the floor, going to the floor, hitting his head. How did he manhandle? The video shows that he grabbed his arm and was directing him down the hallway, but Mr. Rowell kept turning his head towards Officer Wes. He was intoxicated. How's that manhandling? Well, the district court made a finding in the opinion on page three of the order, rather, that Wes grasps Marvin's right upper arm with Wes's left hand. Marvin begins veering to the right side of the hallway, and then the district court says Wes may have also given Marvin a push, but goes on to say the camera angles and position of the bodies make this impossible to determine. We say that a jury should be able to look at this evidence to determine it, especially given Wes's admission to his fellow co-worker that, yeah, he shoved him. Even if we assume that he did give him a push, I think that what Judge Matheson is asking is, how is that objectively unreasonable force in the context of the Supreme Court's admonishment that not every push or shove, even if it may later seem unnecessary, violates a prisoner's constitutional right? Well, I think under Kingsley, because the actions of Dakota Wes were a gratuitous use of force, it did not appear from the video or anything Wes said during his deposition or any of the other facts that were presented to the district court, it did not appear to be necessary, not only to take him to the restraint chair, but given that, not only did it appear not to be necessary to manhandle him in a manner which may have contributed to the fall, especially in light of Wes's admission that he shoved him, he admitted to the other officer that he shoved him. So it's... Is your position that any level of force that results in a serious injury, including death, is objectively unreasonable? No, that's not. I don't say any level of force. I say gratuitous force, force that is not necessary. Now, if Wes... What if he just poked him in the... It wasn't even graving his elbow and he poked him and he said, you know, knock it off. You know, you need to go ahead. And he's drunk. He's obviously difficult for him to stand up on his own. And he's, like you said, he's turning around because he doesn't want to go there. And so if he pokes him and then he trips because he's drunk, does that mean that there was an objectively unreasonable use of force? If the touching by the jailer caused the man to go to the ground, yes. I would say at least it's a fact question. At least it's a fact question. But here we've acknowledged that he's entitled to presumption of innocence. And looking at his behavior in the booking area before he was taken to the restraint chair, yes, he was talking a lot. He wasn't sitting down. But looking at Judge White's findings that he was mostly compliant, and even the finding that, you know, if the decision whether or not to take him to the restraint chair was the only issue, you know, he would have decided against the appellees. But it's that it's those critical facts that occurred in those seconds down the hallway, immediately before Mr. West went to the ground, those facts with his admission subsequent to the incident to his co-worker, that he shoved him, that he pushed him. It's our position under those circumstances, summary judgment should not have been granted. A jury should have been, or fact finder, should have been allowed to make a determination. Can you point to me a case where that is clearly established, such that whether the officer should have known, all reasonable officers should have known that just even a slight push to a pretrial detainee was enough to violate their constitutional rights? I would say Kingsley would be enough. It's because in Kingsley, the court focused on the objective reasonableness of the officer's conduct. We don't have to prove that Mr. West sadistically intended for Mr. Rowell to suffer harm. But we do contend that all of the events from the moment he was removed from the booking area, you're going to the restraint chair, just talking back and forth on the hallway to the restraint chair, West's then manhandling him, and Rowell falling to the ground, and then West admitting, yeah, I shoved him. Those are all facts in sequence that a jury could find that this force was objectively unreasonable. Now, counsel, your time just expired. Did you want to make one concluding sentence, or should we move on? Just very briefly, if I might. Once again, Mr. Rowell was compliant. He was not a threat to anyone. And because Mr. West used gratuitous force, which was totally unnecessary, we think the district court erred by granting summary judgment. Thank you. Thank you. Are we hearing from, who are we hearing from next? Mr. Ardis? Your honors, I will go next. Mr. Smith. Yes. Good afternoon, your honors. My name is Carson Smith. I'm appearing here for Dakota West. First, I want to state certainly we're all in agreement this was an unfortunate accident. It ended tragically with the loss of Mr. Rowell's life. However, we still have to discipline the analysis to Kingsley and to the things that Kingsley points up as important. What I've heard from Mr. Monroe today and from the briefing, I think plaintiff's position markedly undercuts three distinct pillars of the Kingsley analysis. Number one, the analysis in Kingsley advises we cannot apply this standard mechanically. We have to assess the totality of the circumstances impacting the decision. Plaintiff's tact seems to be a mechanical, simplistic narrative of great injury resulted. Ergo, there must have been great force applied. It's kind of a variation of the no harm, no foul. Well, flip that over and we have great harm, great foul. That is a mechanical, simplistic narrative that Kingsley proscribes expressly. Secondly, Kingsley explicitly states we have to make the determination from the perspective of the officer on the scene and what that officer knew. It says we are not to make that assessment using 20-20 vision of hindsight. I think appellant's position does just that. It's over-coded and suffused with a hindsight analysis. If we home in on the moments where Rowell and West walk out into the hallway and take particular notice of those factors in the record, we see as even appellant's counsel admitted, Mr. Rowell was turning around. He was verbal with West. West knew that no detainee wants to go to the restraint chair. Rowell had stopped walking and he turned his face repeatedly towards West and then West grabs his arm in a common escort hold. So those are the factors as they're proceeding in time. Appellant's position seems to want to go back in and reverse-engineer the amount of force used based solely on the result, what happened. Well, counsel? Yes. Go ahead. Judge Matheson, I'm sorry. Judge Bagrat, go ahead. Well, I apologize, Judge Matheson. No, no, you go ahead. I was just going to ask, so Mr. Rowell is, he is turning his head. He's, to go to West, he knows that he's drunk. He knows that he's, I mean, very, very drunk. He sees bruises and markings that he had been in a fight. He's got uneven footing. And so let's say under Rowell or Hudson, it's a slight push, but it's not a slight push under a perfectly normal circumstances. It's, it's a slight push where he can easily have tripped him. And there's, you can tell from the video, not even if he had lived, you can obviously tell that the, that the surface is extremely dangerous. And so I don't think anybody, I don't think you would quarrel with the fact that if Dakota West had put his foot out and did a slight push and tripped him, that that would, in anybody's view, be the unreasonable force. So why isn't it reasonable for a fact finder to infer that a slight push with somebody turned around, uneven footing, he's walking into the wall. Why, why is it an unreasonable factual inference to say that that slight push in those circumstances was unreasonably dangerous? It was, it was no different than if he had stuck his leg out and tripped him. What's wrong with that? Well, Your Honor, I understand the question. However, we have to, in the Kingsley analysis, recognize that we're dealing with the transfer of a detainee in a jail hallway. And we have to defer one of the pillars that I was going to note. One of the pillars is we have to defer to the policies and practices of the jail to not only restore order, but preserve and maintain order of that jail. And some slight escort hold is entirely incidental to jail transfer in a hallway. Now, I think there's a disconnect, respectfully, between the idea of sticking out one's foot to trip an inmate during a transfer and just applying forward guiding force, the latter of which we have here. I think the facts and the conclusion could be different if we had conclusive evidence of sticking one's foot out. That may yoke to the idea of punishment. Here, all we have is incidental application of forward force in a hallway when it's clear to the jailer, based on the jailer's experience also, that this detainee does not want to go to the restraint chair. He's not walking. He hasn't followed orders to sit down in the holding cell. Now, he's not walking as ordered. He's turning around towards me. And so, I, as the jailer, am applying guiding force in a hallway, something that's been sanctioned over and over again in Tenth Circuit law, as cited in our briefs. And so, let me ask you this. Did the district court make this analysis, this objective, objectively reasonable analysis under the Kingsley factors? Or did the district court go on off on a de minimis exception? Your Honor, I think primarily the latter is correct, that the district court found that force applied was de minimis, therefore not implicating Fourth Amendment or Fourteenth Amendment concerns. So, don't we, I mean, did you get a Kingsley analysis under the six factors? Don't we have to remand? Because I don't recall any discussion of the penological need or the procedures for moving prisoners. And what you just argued, I don't recall that being before the district court or the district court considering it in weighing those factors. Your Honor, no, I don't think you would have to remand. Number one, the Graham factors that Appellant's counsel posits, those are permissible and illustrative. They're not mandatory. A Kingsley analysis is more tailored to the jail context than is Graham, which is a little better tailored to uses of force in the field with arrestees. Secondly, even if the district court didn't follow through the complete Kingsley analysis, even using Graham, there are many reasons why reversal is not required. Number one, clearly established law shows that guiding an inmate through a hallway, even pushing an inmate through a hallway, is incidental to jail transfer and is part and parcel of jail, normal jail operations, and has been held objectively reasonable time and again. Whether that's on the first prong of qualified immunity or on the second, I also wanted to note that- Counsel, could I just jump in on that last point? Do you read the district court opinion as relying at all on the second prong of qualified immunity? I'm looking at page five and at the very end it says, having found no constitutional violation, the court need not address movements alternative ground of qualified immunity. So- It does, your honor. Aren't we just reviewing the question of whether there was a violation? No, your honor. I would say the court does say that, but the next sentence begins, the court does note, however, that the 10th circuit held that even an officer slinging plaintiff into a cell causing injury did not violate clearly established law relying on route. And so, even if the holding per se was just based on the first prong, as you know, this court has the ability to affirm on any prong, even if it wasn't reached by the district court. Here, I think that's amply available on the clearly established second prong. Number one, plaintiff didn't try to carry his heavy burden in any regard on that first prong, relying only on state law and jail policy procedure. For that reason alone, this court can affirm. But secondly, we run into the concrete wall of route, showing that guiding and pushing an inmate into a jail hallway or into a cell does not even plausibly state a constitutional violation, even at the motion to dismiss stage. And so, route forecloses plaintiff's ability to make out clearly established law and certainly- I mean, counsel, it is an unpublished case, correct? It is, your honor. So, it's not quite a concrete wall. It's concrete in terms of the concrete analysis of the clearly established, which is supposed to be concrete and particularized to the facts of the case. And insofar as route bases its holding on other 10th circuit case law. And lastly, I wanted to correct appellant's counsel. He said that West had admitted that he had said yes or yeah, I shoved him. We, in fact, disputed that below. What we did admit is that West said he kept turning his body toward me and I effing tried to walk him. He admitted to applying forward guiding force, not to shoving him. But in any regard, I think it's immaterial under route. Is that in the record? Is that on the video? Or would we find anything else in the record about shoving? That is not on the appellate record. The portion referred to by the appellant, it is in the summary judgment record below. But it's not in the record on appeal? Correct. At least the portion referenced by Mr. Monroe earlier, as far as the shoving and the And then lastly, I'll end by noting there's an utter dearth of cases, Supreme Court or 10th Circuit, which would connect with the circumstances faced by defendant West that would have apprised him that his conduct in applying guiding force or even arguendo shoving an inmate in a jail hallway would be objectively unreasonable. There's certainly a debate and it's not beyond debate. Therefore, it's not clearly established and plaintiff hasn't carried his burden. I'll now transfer the matter to Andy Artis. Good afternoon. I represent the Board of County Commissioners of Muscogee County, Sheriff Rob Frazier, Jacob Slay, the guy who's behind Mr. West and Lacey Rawson. If the court decides to go ahead and not agree with the lower court, I think this court still affirm the granting of the summary judgment for these people and entities on the ground supported by the record. Plaintiff had the opportunity to address all of these issues with regard, and I have to go really quickly because I'm limited on time, but with regard to Jacob Slay, he didn't apply any force. He was behind them. The whole incident from the time lasted about four seconds and he didn't have a time to prevent it or even notice that anything excessive was being done. As we've talked about, it's just guiding force. And so the only claim against him is a failure to intervene and there just wasn't time for him to do anything. With regard to Lacey Rawson, she wasn't even- Can I ask you about that? You watch the video, the man falls, he takes a heavy fall. They obviously start to worry that he's dead. I mean, Wes says, didn't need to ask Slay if he did anything wrong. And they stand around, they don't call 911. He doesn't reach down. He doesn't- Your Honor, if you watch the video- I'm sorry. I apologize. No, I'm sorry. Go ahead. When you watch the video, you can see Slay almost immediately reaching to his shoulder where his mic is and he calls for dispatch and he's calling for dispatch to call an ambulance. So he is immediately acting. Within two seconds, three seconds of the fall, he's reaching for his shoulder where his mic is and he's calling, I need dispatch. And then you see him, I think if I remember right, he went into the office and then he comes back. Well, he's calling dispatch and having the ambulance dispatched immediately. And so he is showing concern about that. But they don't do CPR. They don't, you know, they don't, you know, they- Well, there is no claim for a denial of medical care or failure to perform CPR. But again, what they are doing is they're doing chest rubs right here. And when you see the EMTs come, they don't come in and do any, they don't do any CPR because he's breathing and he's got a heartbeat. That's not the issue. None of that would help. There's nothing they could do. And when the EMTs come in, they don't do any of that either. They put him on what he's got is a subdural hematoma, a bleed in the brain and nothing that the EMTs could do would do anything for that. I'm running out of time, so I'm going to move to Lacey Rawson if that's okay. She wasn't even in the hallway. And there's no evidence in the record that Rawson knew that Slay or West was going to use excessive force against Ralph as they escorted him down the for her. And with regard to the board of county commissioners and Sheriff Frazier, the policy, there has been no argument that the policy was unconstitutional or was in any way inappropriate. There's no evidence of any pattern or procedure of this happening. There's no evidence that Jacob Slay or West or Rawson had been used excessive force in the past that would them on any kind of notice. And there's no indication that their training was insignificant or improper or would have been such that it led to the level of deliberate indifference for them to require any more training. They were all trained. They all shadowed. They took the jailer training. They were given ground combat training. So with regard to that, I think the court can go ahead and affirm on all of these, all of my clients, even if they do find there's a question of fact, which I don't think there is, because I think Kingsley says a pretrial detainee must show that the force purposefully or knowingly used against him. And that here is the force of breaching an arm and guiding, which is what everybody uses in the jails everywhere. That's the force that was purposefully and knowingly used was objectively unreasonable. And here, that force is not unreasonable. Thank you. Thank you, counsel. I think we've exhausted the allocated time, so we will consider this case submitted. Thank you for your arguments. Counselor excused. Thank you.